Good morning, your honors. John Heenan on behalf of the defendant and appellant Stephen Caplett. Your honors, I'd like to reserve two minutes for rebuttal. If that's okay. Manage your own time, that will help you out. Thank you, your honor. Mr. Caplett in October of 2007 was an inmate at the Crow Tribal Jail. He escaped from the Crow Tribal Jail by pushing down a BIA officer, knocking him to the ground. His wife picked him up. Mr. Caplett drove approximately 46 miles from Hardin, Montana, where the Crow Tribal Jail is located, to Billings, Montana. When he and his wife arrived in Billings, Montana, they cashed a check at a grocery store, checked into a hotel, and then used methamphetamine together. The issue before this court is whether Mr. Caplett's conduct constituted aggravated assault under Section 2A.2.2 of the Sentencing Guidelines. The District Court relied on Subsection C of 2A.2.2 to find aggravated assault, and that section concerns assault with intent to commit another felony. So what do we do with the letter that the defendant wrote his wife that's referenced in the PSR? The District Court didn't rely on it. Can we look at that letter? And if so, what do we do with it? I don't think so, Your Honor. It's not part of the record before this court. We don't have an actual letter. What we have is a statement that Mr. Caplett gave to the pre-sentence report writer during his interview. Mr. Caplett was encouraged to be forthright with the probation officer because, to be quite frank, he has a serious drug problem, and I encouraged him. So he tells the officer that he writes this letter to his wife to get her there as a guise to go to Billings to get some meth. Now, if we accept the letter or the reference in the PSR as part of the record, is that enough, in your judgment, to satisfy the specific intent requirement? I don't think so, Your Honor. Why is that? Because the whole crux of our argument is that, both temporally and spatially, this relevant conduct was so far removed from the assault on this BIA officer in Hardin, we don't know how much longer. It could have been hours after the fact that Mr. Caplett used these drugs. And in the cases cited by the government or just period having to do with this application of the subsection C, intent to commit another felony, there's a close temporal relationship between the assault on the officer and the other crime that's being committed. Here, it's far removed, and I think it's a slippery slope. How far does relevant conduct go in terms of its attenuation from the actual assault? So if we were to write a rule, what would we say? If you were going to write a rule? Yes. In your judgment, how attenuated is too attenuated? How do we craft a rule that would allow relevant conduct to be considered but not be too attenuated? Is it 10 minutes? Is it one hour? Is it two? Well, I think the problem in this case is certainly Mr. Caplett's intent was to commit another crime, but that other crime was to escape from prison. The problem is that under tribal law, escape from prison is a misdemeanor, not a felony. Right. So with respect to the methamphetamine, I mean, I would submit, Your Honor, that- And the Montana State statute does not grace tribal detention centers, correct? Correct, Your Honor. Correct. The problem is I think that- This is really a question of his state of mind, right, at the time he committed the assault. Isn't that what it comes down to? Yes, Your Honor. All right. And so the district judge, depending on the circumstances, he said he didn't consider that letter, right? Correct, Your Honor. He would not consider the letter. So what are the circumstances that he considered that? One, he committed the assault. His wife was there to meet him, right, just like she said, just like he told her to be there? Correct, Your Honor. And then they drove, what, a couple hours? No one knows, and I think that's the problem with this case. There's not a sufficient factual record. Well, he drove, you know, we'll say a few hours, and then they, you know, cast a check and used some drugs. Why is it- and so the standard of review is clear error, right, whether it was clearly erroneous for the district judge to find that he had that state of mind. Now, why is it clear error from those circumstances to infer intent to use drugs? I mean, you seem to be depending only upon the time lapse, but it's not really very long. I mean, suppose he had said, well, I got to break out of jail because I got to kill that cop in Missoula, and it took him two days to get to Missoula, and then he shot a police officer. Couldn't you infer he had the intent two days before when he broke out of jail to commit that assault on the police officer? I mean, two days is not that long. No, and that's a very valid point that you make, Your Honor. I think that in a way gets us back to this letter and whether or not the court's going to consider this letter. The district court didn't consider it. That issue hasn't been addressed in the Ninth Circuit, whether it's appropriate for the district court to rely on information given by the defendant as part of his pre-sentence interview to enhance a sentence. But the district court didn't rely on the letter in this case. It didn't, Your Honor. And so I think that's where we get back to Judge Tashima's question about if someone has the intent to escape from prison and commit a murder, even if it happens two days later, if we know that he had the intent while in prison, then it would be hard to argue that that wasn't an intent. No, no, no, no. My point is, I mean, if he says he's going to do something and he does it two days later, then you can infer that at the time he said it, he had the intent to do it, right? Correct, which I think what you have to concede, and I think you're asking a very legitimate question, is if the court's going to rely on this letter that the district court didn't rely on, then I'd have to concede that there's proof of intent. All right, so if we can't or should not rely on the letter, then the only evidence is that he committed the crime or he used meth, right? That's exactly it, yes, Your Honor. So the question is then, can we infer from the fact that a person did something at a certain time, and he had the intent to do it several hours earlier? Isn't that what it comes down to? I don't think that if we take out this letter and this confession, I don't think there's any evidence of intent that the defendant wanted to do anything other than escape from the prison, and I'd submit that. Well, I accept that. Now, what about this? Now, you say everybody knew he was a drug addict, couldn't you infer from that that the reason he wanted to escape from jail was because he wanted to use drugs? I think in general terms, Your Honor, that usually when people escape from jail, their intent probably concerns something that's unlawful. What I'm getting at, the problem is how to apply the clear error standard of review. You know, I mean, how much is not enough so it amounts to clear error? That's what this case comes down to, doesn't it? Yes, Your Honor, and I think the problem is we were hamstrung by, it's our position that there wasn't a sufficient factual record before the district court to make the enhancement that it made. Let me ask you a slightly different question. It appeared to me from the sentencing transcript that almost everyone was trying to increase or get a sufficient sentence to get your client to be eligible for rehabilitation, right? That's correct, Your Honor. So if we were to agree with you in this case, how much of a sentence reduction would that be? Have you calculated it? Well, the district court went above the guideline range to achieve the result of getting Mr. Caplet sufficient time to qualify for the drug and alcohol program. And this would take him out of it, correct? Well, I think what would happen, Your Honor, is the case would get remanded, and my guess, my hunch would be that there would still be a sentence fashion to afford Mr. Caplet the opportunity to qualify for the drug program. Thank you, counsel. Thank you, Your Honor. You used up your time, but we'll give you a minute for a button. Thank you. Ms. Suk. Good morning, Laurie Suk for the United States. The issue before the court is whether the district court committed clear error in the findings to support the enhancement. The findings found by the court, and to use the court's words, were that they, meaning Caplet and his wife, pretty much immediately went to the motel after they got some money. What page are you on? It is the excerpts of record, tab 2 at 16. Okay. So if you go to the excerpt of record. All right, I got you. Go ahead. Okay. He said he did a line of meth that his wife had on her. I think that's enough for me to find that Mr. Caplet planned this escape and committed it to commit another felony, that felony being possession of methamphetamine. And then again, he reiterated basically that same finding, saying almost the first thing Caplet did when he got out after his wife got him here to Billings was to possess and use, quote, a line of methamphetamine. So the district court's findings are obviously the court is inferring intent from conduct. Yes, but you'd agree this is a specific intent. I would agree that. There's no dispute from the government that we have to prove Judge Teshim is absolutely right. We have to establish the intent of the defendant at the time of the assault. Now, certainly. It has to be done inferentially in this case. It does, because the district court. You'd say that he had the intent of committing a burglary. Well, it depends on the circumstances of the case, and what you're deciding here is whether Judge Siebel committed clear error in finding this, in finding that almost the first thing he did was to use a line of methamphetamine. But, you know, this is several hours later. They go cash a check. They do a line. Then he does some other things. To get a specific intent finding out of that is a stretch. Well, it certainly. You have a clear error review standard going in your favor, obviously, but it's a bit attenuated. And it certainly makes it more. By the way, let me ask you the question Judge Thomas asked your opponent. You agree that we should not consider that letter or the statements about the letter? That's an interesting question, Your Honor, and I've tried to figure that out. The district court certainly did not consider it. So you can say that is not in the record, except that they're undisputed facts in the pre-sentence investigation report. Well, but still, not only is it not in the record, but the reason it's not in the record, because apparently the district court agreed that, in effect, it was not admissible or shouldn't be treated as admissible evidence. Well, if you look at the sentencing transcript on page five, I don't think there was really all that much analysis. I think what happened here is the district court thought he had enough with respect to the conduct of the defendant. And I certainly fell by the wayside in my job in stopping the court at that point and saying, I understand that I'm winning this argument, but why aren't you considering these good facts like the letter and his drug use, which would make it a much closer question. Well, does the letter get you all that far, though? Because what he says in the letter, or at least the report of the letter is, he wrote to his wife under the guise that they would drive to Billings to get some methamphetamine. He says his wife loves methamphetamine, therefore he knew she would show up. So he's saying in the letter that this was a ruse to get his wife there. He didn't say, I'm going to bust out and do some meth. It's not a specific, I'm going to kill somebody, but certainly the letter in conjunction with what he did would make this a much stronger argument if considered. And so with respect to that question, these are the defendant's statements to the pre-sentence report writer. Obviously he didn't dispute them because they were his statements. And we just, it was a fly-by analysis mostly on the fault of the United States. I should have stopped the court when I realized that he wasn't using the letter, to be honest with you, and that was a mistake I made in my brief. I knew that he had decided not to use his drug use. I just totally read by the fact that he didn't even consider paragraph 19 as well. The difficulty with inferring intent is that you have a whole lot of evidence that when people are released on bond, if they're meth addicts, they go right to meth. Certainly. So you could say in every situation if you have an addict that you could infer intent to do a crime if they escape. But we might not have the evidence that they actually did it, which in this case we do. You couldn't prosecute on that. No, but it is a felony under state law to possess methamphetamine. So we do have the conduct. And what's most important about that is that's what the district court relied upon. The district court thought that was the most important factor, is what did the defendant actually do immediately after he escaped. And we don't have a circuit case that talks about relevant conduct. Not in this circuit, just in the other circuits after that amendment took out the reference to, allow that broader look at conduct that could be used for this enhancement. In the end, what I would say, in answer to one of your questions, Judge Thomas, if the judge recalculated the range, it would be recalculated to 15 to 21 months instead of a top range, excuse me, of 30 months. And that's what the government asked for was 30 months. We did go to 36. I'm sure you read that discussion because the most important thing the district judge wanted here was the 500-hour drug treatment program. If this goes back down, for example, there might be an upper departure on some other basis, I expect. Well, I think if we want to do something for Mr. Kaplett that hopefully will help him take care of what's the thrust of his criminal activity, that's what the district judge will want to do, take care of this methamphetamine problem. And we've got to keep him in that program in the view of the district court, and the government agrees with that. I think so does the defense. Well, if we reverse, it would be because sort of at the preliminary stage, so to speak, the district court didn't correctly apply the guidelines. Absolutely. But then, not like in the old days, that would just sort of be the beginning. It would be. I mean, after that, then the court can say, well, okay, under 3553A, I think I should, what do they call it now? Very upward. Very. That's the word we're using now. In other words, the district court still has that discretion. Certainly, Judge Tichina.  This case presents some difference. It presents the legal issue. It's a legal issue, but it's interesting beyond the facts, the case, too.  All right. Thank you. Any further questions? Thank you. We'll give you a minute. Thank you, Your Honor. Just real briefly, I think it's important to note the reason the district court didn't rely on this letter, and that's because I think as reflected in the transcript, he agreed that it would create a chilling effect on people in his court with drug problems that are trying to qualify for the drug and alcohol program, which is a very good program, and if the statements they make trying to qualify for that program serve to enhance their sentence, pretty quickly people aren't going to be forthcoming. The district court did rely on the statement, another statement in the PSR, didn't he? That was a statement that Mr. Caplet had given to law enforcement, not to the pre-sentence report writer. And I think we're in agreement with the government with respect to the district court's motivations, and I think I'm certainly not here to argue that the district court couldn't achieve the same result a different way on remand. Thank you, Your Honors. Thank you both for your arguments. The case just will be submitted.
judges: Fletcher B. , Tashima, Thomas